IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMIE MCKNIGHT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AIMBRIDGE EMPLOYEE | : | |
| SERVICE CORPORATION | : | NO.  15-3461 |

## MEMORANDUM

**Padova, J.**                                                    **September 16, 2016**

     Plaintiff, Jamie McKnight, has brought this action against his former employer, Aimbridge Employee Service Corporation ("Aimbridge"), asserting claims for race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").  Before the Court is Defendant's Motion for Summary Judgment.  For the reasons that follow, we grant the Motion.

## I.      BACKGROUND

     On June 14, 2013, Magna Hospitality Group, which owned and operated the Fort Washington, Pennsylvania Hilton Garden Inn (the "Hotel"), hired McKnight, who is African American, to work as a line cook.  (Concise Statement of Stipulated Material Facts ("SMF") ¶¶ 3, 8.)  On October 8, 2013, Aimbridge took over the management of the Hilton Garden Inn.  (Id. ¶ 3.)  Aimbridge hired the Hilton Garden Inn's staff, including McKnight, and kept them in their existing roles.  (Id. ¶¶ 3, 8.)  McKnight worked as a line cook during the morning shift, Mondays through Thursdays, from 5:00 a.m. until 2:00 p.m.  (Id. ¶ 9.)  His job duties included "preparing food, maintaining the cleanliness of the kitchen, complying with safety standards, ensuring a high level of customer service . . ., prepping the food stations prior to breakfast and lunch service, and cleaning up after breakfast and lunch service."  (Id. ¶ 10.)  McKnight was supervised

by Erica Maher (Caucasian), the Hotel's Kitchen Manager, and Tammy Kim (Asian), the Hotel's Restaurant Manager.  (Id. ¶ 11.)

On June 8, 2014, McKnight applied for unemployment compensation benefits.  (Def.'s Ex. 23; McKnight Dep. at 203.)  On June 9 or 10, 2014, McKnight approached Kim and Bret Jones, General Manager of the Hotel, and asked to be transferred from his job in the kitchen to a position working in the banquet department.  (McKnight Dep. at 87; Jones Dep. at 11.)  Kim agreed, but told McKnight to notify Maher about his request and to obtain permission from Jones for the transfer.  (Kim Dep. at 35; McKnight Dep. at 87, 89.)  Kim also informed McKnight that the job might not be full time.  (McKnight Dep. at 88.)   When McKnight approached Jones, Jones asked him why he wanted to transfer to banquets.  (Id. at 129.)  McKnight maintains that he informed Jones that Maher had discriminated against him on the basis of his race with respect to lateness, attendance, and work assignments and that Devin Jarvis, the Hotel's Accounting Manager/HR Manager, made racial comments to him.[1]  (Id. at 77-78, 129-133.)  McKnight was not satisfied with Jones's response to his complaint of discrimination and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 10, 2014.  (Id. at 77, 85.)  McKnight did not tell anyone at the Hotel that he had filed the June 10, 2014 Charge.  (SMF ¶ 19.)  Aimbridge received a copy of the June 10, 2014 Charge on June 16, 2014.  (Id.)

Plaintiff asserted in the June 10, 2014 Charge of Discrimination that he had been discriminated against based on his race and religion.  (Def.'s Ex. 11.)   The Charge specifically

---

[1]Jones denies that McKnight told him that Maher discriminated against McKnight on the basis of his race and also denies that McKnight told him that Jarvis made racial remarks to McKnight.  (Jones Dep. at 42-44.)

addressed two incidents.  (Id.)  The first occurred in September 2013 (before Aimbridge took over management of the Hotel), when McKnight was disciplined for leaving the kitchen area dirty.  (Id.)  He stated in the Charge that other individuals who worked in the kitchen and were neither African-American nor Muslim were not disciplined for the same conduct.  (Id.)  The second incident occurred on April 20, 2014, when Maher directed him to work on Easter Sunday, which was not one of his normal workdays.  (Id.)  McKnight stated in the Charge that Maher told him the following: "you['re] Muslim[,] you don't celebrate holidays, you can work."  (Id.)

On June 12, 2014, Maher and Jarvis met with McKnight toward the end of his shift. (SMF ¶ 15.)  They reviewed McKnight's strengths and areas that he needed to develop.  (Maher Dep. at 42.)  Maher had prepared an individual development plan for McKnight in which she stated that he needed to develop his presentation skills, front of house hospitality, food safety, and preparation for the lunch shift.  (Maher Dep. at 45; Def.'s Ex. 10 at Aimbridge-000100.) During the meeting, Maher also presented McKnight with documentation of a verbal warning for tardiness, which he refused to sign.  (SMF ¶ 17; Def.'s Ex. 10 at Aimbridge-000101-103.)  The warning stated that McKnight had been a half-hour to 45 minutes late for work more than three times in the previous three months.  (Maher Dep. at 47; Def.'s Ex. 10 at Aimbridge-000101.) The warning further stated that McKnight's attendance would be reviewed again monthly. (Maher Dep. at 48; Def.'s Ex. 10 at Aimbridge-000101.)  This was the first and only written discipline that Maher issued to McKnight.  (Maher Dep. at 49.)  Even though he had been late to work nine times in January 2014, three times in February 2014, four times in March 2014, six times in April 2014, and five times in May 2014, Maher had not issued McKnight a written discipline for lateness prior to the June 12, 2014 meeting.  (Maher Dep. at 49-53; Def.'s Ex. 10 at Aimbridge-000103.)  McKnight's time card record shows that he was late to work 91 times from

3

October 2013 through June 2014.  (McKnight Dep. at 164-165; Def.'s Ex. 12.)  McKnight refused to sign the documentation of the verbal warning because he took the position that he had not really been late on all of those occasions.  (McKnight Dep. at 153.)  As he explained, on some of those days he had permission from Maher to arrive at work late, and on other days he left his badge inside his car and did not clock in when he arrived at work.  (Id.)

McKnight informed Maher and Jarvis during the June 12, 2014 meeting that he was unhappy in the kitchen and wished to be transferred to the banquet department.  (Maher Dep. at 43; Def.'s Ex. 10 at Aimbridge-000100; McKnight Dep. at 153, 185.)  Maher told McKnight that she had already heard that he wanted to be transferred.  (McKnight Dep. at 153.)  McKnight told her that he did not feel comfortable discussing his request to transfer with her.  (Id.)  He believed that Maher had learned that he had complained about her.  (Id. at 157.)

After their meeting with McKnight ended, Maher and Jarvis met with Jones.  (Jones Dep. at 51, 52.)  Maher told Jones that McKnight's review did not go well, that he was unhappy with the written discipline, and that he no longer wanted to work in the kitchen.  (Id. at 51-52.)  Jones did not schedule McKnight for any hours in the kitchen after this conversation with Maher.  (Id. at 75.)  On July 3, 2014, McKnight was replaced as a breakfast line cook by Woodrow Cosom, who is African American.  (SMF ¶ 23.)

Jones spoke with McKnight by phone on June 24, 2014.  (Def.'s Ex. 22; McKnight Dep. at 172.)  They discussed whether McKnight wanted to continue working in the kitchen.  (Def.'s Ex. 22; McKnight Dep. at 172.)  McKnight informed Jones that Maher told him on June 12, 2014, that she did not want him to work in the kitchen any longer.  (McKnight Dep. at 172.)  Jones told McKnight, during that phone conversation, that Kim would reach out to McKnight about training for the banquet job.  (Def.'s Ex. 22; McKnight Dep. at 172.)

Shortly thereafter, Kim contacted McKnight about the banquet job. (McKnight Dep. at 170, 187.) During their conversation, Kim told McKnight that his request to transfer to a banquet set-up job had been approved and discussed scheduling his training for the position. (Kim Dep. at 42; McKnight Dep. at 187.) Traning for the banquet set-up position consisted of one week of training with Kim, a week floating with another banquet employee, and a week working a regular schedule with Kim shadowing the employee. (Kim Dep. at 42.) Every banquet employee has to go through that training. (Id.)

McKnight was scheduled to appear at the Hilton Garden Inn regarding his training as a banquet set-up man on June 27, 2014 at 11:00 am. (Def.'s Ex. 25; McKnight Dep. at 187-88.) McKnight was not able to get to the hotel that day because he had been out of town and ran into traffic on his way back. (Def.'s Ex. 25; McKnight Dep. at 188.) McKnight's first day of training was the following Sunday, June 29, 2014, during which he trained with another banquet employee and was given paperwork to complete. (Def.'s Exs. 25, 26; McKnight Dep. at 187-89.) Kim subsequently called McKnight to confirm his need to fill out the paperwork and to schedule the remainder of his training. (Def.'s Ex. 25; Kim Dep. at 50.) One of the documents McKnight was supposed to sign was a memorandum confirming that McKnight "wanted to transfer to an on-call banquet set-up position and . . . that was the only position . . . at the hotel that [he] wanted." (McKnight Dep. at 178; Def.'s Ex. 13.) McKnight did not complete his training or return the paperwork to Kim and, as a result, Kim did not schedule McKnight for work on any banquets. (Def.'s Ex. 25; Kim Dep. at 50-51.)

McKnight spoke with Jones in July 2014 about the banquet set-up position. (McKnight Dep. at 207.) McKnight told Jones that Kim told him that if he did not return the paperwork, she would not schedule him for hours in banquets. (Id.) McKnight maintains that Jones told him

5

that Kim was wrong about needing the paperwork and that Kim would call him and give him some hours in banquets.  (Id. at 207-08.)  McKnight unsuccessfully tried to reach Jones sometime between August 1, 2014 and August 19, 2014, by calling the Hotel's front desk and asking to be transferred to Jones.  (Id. at 208.).

On August 19, 2014, McKnight filed his second Charge of Discrimination against Aimbridge with the EEOC.  (Def.'s Ex. 27.)  In this Charge, he claimed that he had been retaliated against on June 12, 2014 for filing his June 10, 2014 Charge.  (Id.)  Specifically, he stated in the Charge that on June 12, 2014, in retaliation for filing his June 10, 2014 Charge, he was given disciplinary notices for lateness and, when he refused to sign the notices, he was sent home from work.  (Id.)  He also stated that he had been given a memorandum to sign stating that he would be transferred to an on-call position and that he had not been scheduled to work since he refused to sign that memorandum.  (Id.)

McKnight did not try to contact anyone at Ambridge again until December 12,  2014, when he called Jones.  (Id. at 226, 235-36.)  McKnight asked Jones if he could use his Hilton employee discount to go on vacation.  (Id. at 233, 235.)  Jones said that he could, and asked if McKnight was still interested in the banquet set-up position.  (Id. at 233.)  McKnight reports that he responded affirmatively.  (Id.)  Jones told McKnight that the Hotel might have hours available in banquets after renovations were completed in February 2015.  (Id. at 233, 242-43.)  Jones sent a text to McKnight regarding the employee discount on December 19, 2014.  (Id. at 236.)  McKnight did not speak with anyone from Aimbridge after December 19, 2014.  (Id.)

Aimbridge decided to terminate McKnight in January 2015.  (Jones Dep. at 92.)  On January 9, 2015, Jones sent McKnight a letter notifying him that he was being terminated for job abandonment.  (Def.'s Ex. 29.)  The letter states as follows:

As you know, since June of last year the hotel has been trying to get you to come in to complete training for banquet set-up.  You have not returned those calls or otherwise contacted us for work of any kind.  Out of the blue, on December 12 you called me and said that because you are still "on call" you wanted to use an associate discount to stay at a Hilton hotel.  I asked why you have not returned calls requesting you to come in and train and you claimed you never received any messages.  I explained to you that we are currently renovating the public space but when we finish this up at the end of February we may have need for a setup person.   I asked if you would be willing to come in and continue with your training, and you abruptly stated you would book your reservation and come see me for your Hilton passport and hung up before answering my question.

I have been waiting for you to come in for the Hilton Passport to settle once and for all whether you intend to remain employed and complete training for the banquet position.  I have not heard from you in over a month.  At this point in time Jamie, you have not worked at the hotel for over 6 months and you have shown absolutely no interest in working, as evidenced by your failure to call and inquire about available work.  We consider your lack of interest and refusal to report for training as a job abandonment, and we will process your separation accordingly.  I wish you luck in your future endeavors.

(Def.'s Ex. 29.)

On February 19, 2015, McKnight filed a third Charge of Discrimination with the EEOC. (Def.'s Ex. 14.)  He claimed in this Charge that he had experienced racial discrimination and retaliation.  (Id.)  Specifically, he stated that in August 2014, Kim told him that he had to sign a letter stating that he would return to work on an on-call status and that he agreed to sign the letter once he returned to work, but was never assigned any hours to work. (Id.)  He further stated that he called Jones on December 10, 2014, and asked to use a hotel discount passport and also asked to be assigned hours to work at the Hotel.  (Id.)  While Jones agreed to provide the discount and to assign McKnight to a position in the banquet department once hotel renovations were completed, McKnight was instead fired once he returned from his vacation.  (Id.)

The Complaint asserts two grounds for relief.   Count I alleges that Aimbridge discriminated against McKnight on the basis of his race and retaliated against him in violation of

42 U.S.C. § 1981.  Count II alleges that Aimbridge discriminated against McKnight on the basis of his race and retaliated against him in violation of Title VII.[2]  Aimbridge has moved for summary judgment as to all of McKnight's claims.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  <u>Id.</u>

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial <u>Celotex</u> burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.  After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing

---

[2]Count II of the Complaint also asserts a Title VII hostile work environment claim against Aimbridge, but McKnight has withdrawn that claim.  (<u>See</u> Pl.'s Concise Statement of Additional Material Facts at 1 n.1.)

"sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)).

## III.   DISCUSSION

### A.   Racial Discrimination

McKnight contends that Aimbridge discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 and Title VII insofar as it terminated his employment.  "Section 1981 guarantees the right of all persons in the United States 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" Allen v. Nutrisystem, Inc., 546 F. App'x 98, 100 (3d Cir. 2013) (quoting 42 U.S.C. § 1981; Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010)).  "Ordinarily, to establish a basis for relief under section 1981 a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.'" Estate of Oliva, 604 F.3d at 797 (quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002)).  In this case, the alleged discrimination concerns McKnight's right to "make and enforce contracts." See 42 U.S.C. § 1981.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Unless there is direct evidence of

discrimination, we analyze discrimination claims brought pursuant to § 1981 and Title VII pursuant to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3]   See Merke v. Lockheed Martin, 645 F. App'x 120, 123 n.4 (3d Cir. 2016) ("The same analytical framework is used for employment discrimination and retaliation claims under Title VII [and] § 1981 . . . ." (citing Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999)).

"Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination. . . ." Dellapenna v. Tredyffrin/Easttown Sch. Dist., 449 F. App'x 209, 213 (3d Cir. 2011) (citing McDonnell Douglas, 411 U.S. at 802).  In order to establish a prima facie case of discrimination, McKnight must establish:  "(1) he belongs to a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) the adverse employment action gave rise to an inference of discrimination (such as by replacing the plaintiff with someone not in the protected class)."  Merke, 2016 WL 1105401, at *3 (citing Anderson v. Consol. Rail Corp., 297 F.3d 242, 249 (3d Cir. 2002)).

If McKnight succeeds in establishing a prima facie case of discrimination, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision." Dellapenna, 449 F. App'x at 213 (citing McDonnell Douglas, 411 U.S. at 802).  If Aimbridge is able to meet this "'relatively light burden,' the burden of production returns to [McKnight], who can defeat summary judgment only by showing by a preponderance of the evidence that [Aimbridge's] stated reason is pretextual."  Id. (quoting and citing Fuentes v.

---

[3]McKnight has not pointed to any direct evidence of discrimination in this case and agrees that his § 1981 and Title VII claims should be analyzed under the same standard.  (See Pl.'s Mem. at 4.)

Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).   Consequently, if Aimbridge is able to state a legitimate and nondiscriminatory reason for its treatment of McKnight, McKnight "must produce evidence that either '(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of'" the adverse employment action.  Id. (quoting Fuentes, 32 F.3d at 762). McKnight cannot meet his burden at this last step simply by showing that Aimbridge was wrong, rather, he "must uncover 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in [Aimbridge's] explanations that would permit a reasonable factfinder to believe that [Aimbridge] did not actually act for its stated reasons."  Id. (quoting Fuentes, 32 F.3d at 765).

Aimbridge argues that it is entitled to summary judgment with respect to McKnight's discrimination claims in Counts I and II because McKnight cannot establish a prima facie case of racial discrimination.  Aimbridge does not dispute that McKnight is a member of a protected class or that his termination constituted an adverse employment action.  However, Aimbridge argues that McKnight has not proffered evidence that could support the conclusion that he was qualified for his position or that his termination gave rise to an inference of discrimination.

Aimbridge argues that the undisputed evidence establishes that McKnight was not qualified for his position after June 12, 2014, because he did not complete the training required for the banquet set-up position to which he had been transferred, at his request.  McKnight has conceded that he had to be trained for this position.  (See Pl.'s Mem. at 15 (stating that McKnight met the objective qualifications for the banquet set-up position "if trained and contacted").)  The only evidence of record regarding the length and type of training required for

11

this position is the testimony of Kim.  (SMF ¶ 11.)  Kim testified at her deposition that every employee who worked banquets was required to complete the following training:   one week of training with Kim; one week of working with another banquet employee; and one week working a regular schedule with Kim shadowing the employee.[4]  (Kim Dep. at 42.)  The undisputed evidence is that the only training that McKnight completed was one day of training with another employee on June 29, 2014.  (McKnight Dep. at 179, 182.)  Kim testified at her deposition that she called McKnight on July 2, 2014 to schedule additional training but that he did not return her call.  (Kim Dep. at 50.)  McKnight denies that Kim left him a message on July 2, 2014, but also testified that he had problems with his phone during the summer of 2014.  (McKnight Dep. at 53-54, 197.)  It is undisputed that, after June 30, 2014, McKnight never called Kim to schedule the rest of his training or to ask for work hours in banquets.  (Id. at 206.)

We find that the undisputed evidence of record establishes that McKnight did not complete the three weeks of training required for the banquet set-up position.  We conclude, accordingly, that McKnight has not satisfied his burden of citing to material in the record that could establish that he was qualified for the banquet set-up position.  See Sosa v. Napalitano, 318 F. App'x 68, 74 (3d Cir. 2009) (concluding that the plaintiff had not established a prima facie case of race discrimination where she failed to successfully complete the training required for her position).  Consequently, we further conclude that McKnight has not satisfied his burden of responding to Defendant's Motion for Summary judgment with a factual showing "sufficient to establish" a prima facie case of racial discrimination based on his termination from employment.

---

[4]McKnight denies being told that he had to train with Kim (McKnight Dep. at 193-95), but does not deny that he was required to complete a total of three weeks of training for the banquet position.

12

Celotex, 477 U.S. at 322.  We thus grant Aimbridge's Motion for Summary Judgment with respect to McKnight's claims in Counts I and II that he was discriminated against on the basis of his race in violation of 42 U.S.C. § 1981 and Title VII.[5]

      B.    Retaliation

McKnight claims that Aimbridge retaliated against him for his complaints of discrimination in violation § 1981 and Title VII.  "To maintain a claim for retaliation" brought pursuant to § 1981 and Title VII, the plaintiff is "first . . . required to establish that he [has] a prima facie case by tendering evidence that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."  Estate of Oliva, 604 F.3d at 798 (citing Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006)); see also id. n.14 (citation omitted).  "In considering the second element of a prima facie case, the key inquiry is whether the alleged retaliation 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. (quoting Moore, 461 F.3d at 341).  "The third element of the prima facie case 'identif[ies] what [adverse employment action], if any, a reasonable jury could link to a retaliatory animus.'"  Id. (first alteration in original) (quoting Moore, 461 F.3d at 342).  "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct.  If an employer advances

—————————————

[5]Since we have granted Aimbridge's Motion for Summary Judgment as to McKnight's discrimination claims on this basis, we need not address Aimbridge's second argument in favor of summary judgment as to these claims, i.e., that McKnight cannot satisfy the requirement that he establish the fourth element of his prima facie case of discrimination, that he was terminated 'under circumstances that could give rise to an inference of intentional discrimination."  Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802; Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc)); see also Merke, 645 F. App'x at 124 (citations omitted).

such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation." Id. (citing Moore, 461 F.3d at 342).   To meet his burden of showing pretext at this stage, McKnight must "'convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"   Young v. City of Philadelphia Police Dep't, -- F. App'x --, No. 15-2115, 2016 WL 3101283, at *4 (3d Cir. June 3, 2016) (quoting Moore, 461 F.3d at 342; and citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).   "Thus, the plaintiff must ultimately prove that [his] employer's retaliatory animus was the cause or, put differently, the 'real reason,' for the adverse employment action."   Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000); Moore, 461 F.3d at 342).   "[T]o prove causation at the pretext stage, the plaintiff must show that [he] would not have suffered an adverse employment action 'but for' [his] protected activity.   Id. (citing   Univ. of Tex. Sw. Med. Ctr. v. Nassar, -- U.S. --, 133 S. Ct. 2517, 2533 (2013)).

McKnight claims that he complained to Jones about racial discrimination on June 9 or 10, 2014, and that he filed his first Charge of Discrimination with the EEOC on June 10, 2014. (McKnight Dep. at 77-78, 85; Def.'s Ex. 11.)   He contends that he was subjected to four adverse actions in retaliation for the protected activities of complaining about discrimination to his supervisor and bringing a Charge of Discrimination before the EEOC:   (1) he was disciplined for lateness and given a development plan for performance improvement on June 12, 2014; (2) he was sent home early from work on June 12, 2014, removed from the kitchen work schedule, and given no further work as a cook; (3) he was denied work hours and compensation as a banquet employee from June 30, 2014 through January 2015; and (4) he was officially terminated on January 9, 2015.  (Pl.'s Mem. at 7.)

14

1. <u>Prima facie case of retaliation</u>

Aimbridge does not dispute that McKnight's June 9 or 10, 2014 complaint about discrimination and his filing of a Charge of Discrimination on June 12, 2014 constitute protected activity.  However, Aimbridge argues that Maher's June 12, 2014 verbal warning about lateness and presentation to McKnight of a development plan for performance improvement are not adverse employment actions that can support a retaliation claim.  "The anti-retaliation provision of Title VII covers only those employer actions that are 'materially adverse to a reasonable employee or job applicant' and would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'"  <u>Greer v. Mondelez Global, Inc.</u>, 590 F. App'x 170, 175 (3d Cir. 2014) (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)); <u>see also</u> <u>Estate of Oliva</u>, 604 F.3d at 798.  "'[R]etaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  <u>Caver v. City of Trenton</u>, 420 F.3d 243, 255 (3d Cir. 2005) (quoting <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (3d Cir. 1997)).  "As such, in cases not involving actual discharge or refusal to hire, courts may find unlawful retaliatory conduct 'only if it alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"  <u>Id.</u> (quoting <u>Robinson</u>, 120 F.3d at 1300).  "'[U]nsubstantiated oral reprimands' and 'unnecessary derogatory comments' are not serious and tangible enough to constitute adverse employment actions."  <u>Id.</u> (quoting <u>Robinson</u>, 120 F.3d at 1301).  Even a written reprimand is insufficient, by itself, to establish an adverse employment action.  <u>See</u> <u>Mieczkowski v. York City Sch. Dist.</u>, 414 F. App'x 441, 446-47 (3d Cir. 2011).  Moreover, "[a] negative evaluation, by itself, is not an adverse employment action."  <u>Walker v. Centocor Ortho Biotech, Inc.</u>, 558 F. App'x 216, 220 (3d Cir. 2014) (citing

Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)).  McKnight has pointed to no evidence that his June 12, 2014 receipt of the written documentation of a verbal warning for lateness and a written development plan for performance improvement themselves altered his "compensation, terms, conditions, or privileges of employment."   Caver, 420 F.3d at 255 (quotation omitted).  We conclude, accordingly, that these actions do not constitute adverse employment actions that are sufficient to support the existence of a prima facie case of retaliation.

Aimbridge further argues that there is no evidence that McKnight was sent home early on June 12, 2014 and, even if there were, his early dismissal would not constitute an adverse employment action that can give rise to a retaliation claim.  However, there is evidence on the record that McKnight's shift usually did not end until approximately 2:00 p.m. and that he clocked out at 12:21 p.m. on June 12, 2014.  (SMF ¶ 9; Def.'s Ex. 12 at Aimbridge-000069.) The record thus contains evidence upon which a reasonable jury could find that McKnight was sent home before his shift ended on June 12, 2014.  Nevertheless, the record contains no evidence that McKnight lost any wages on account of his early departure on June 12, 2014, or that his early departure led to any other alteration of his "terms, conditions, or privileges of employment."   Caver, 420 F.3d at 255 (citation omitted).  We conclude, accordingly, that the record does not contain evidence upon which a reasonable jury could find that any early dismissal on June 12, 2014 constituted an adverse employment action.

Aimbridge does not oppose the existence of a prima facie case of retaliation on any other basis that we may consider at this stage of our analysis.[6]  Consequently, we accept for purposes of Defendant's Motion, that McKnight has established a prima facie case of retaliation as to the three remaining claimed adverse employment actions:   (1) Maher's removal of McKnight from the kitchen work schedule after June 12, 2014; (2) Kim's denying him work hours and compensation as a banquet employee from June 30, 2014 through January 2015; and (3) Aimbridge's termination of McKnight's employment on January 9, 2015.

2.    Legitimate, non-retaliatory reasons for Aimbridge's actions

Aimbridge has submitted evidence that it had legitimate, non-retaliatory reasons for all three of the remaining alleged adverse employment actions.  With respect to McKnight's failure to get kitchen work after June 12, 2014, the record contains evidence that McKnight was removed from the kitchen work schedule after June 12, 2014, because he asked to be transferred to banquets and no longer wanted to work in the kitchen.  (Jones Dep. at 51-52, 75; Maher Dep. at 59-60; Def.'s Ex. 22.) With respect to McKnight's failure to get banquet work after June 29,

---

[6]Aimbridge argues that McKnight cannot satisfy the requirement that he make out a prima facie cause of retaliation because there is no evidence on the record that McKnight's protected activity was the "but-for" cause of the adverse employment actions McKnight claims were taken by Aimbridge.  However the "but-for" causation standard is only applicable when considering pretext and we do not apply it at the prima facie case stage of our analysis.  See Young, 2016 WL 3101283, at *5.  As the Third Circuit has explained, "the 'causation standards for establishing a prima facie retaliation case and proving pretext are not identical.  Rather, the burden for establishing causation at the prima facie stage is less onerous.'"  Id. (quoting Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 251 (4th Cir. 2015)).  "Applying the 'but-for' standard at the prima facie stage would effectively eliminate the need to use the McDonnell Douglas burden shifting framework because plaintiffs who can prove 'but-for' causation at the prima facie stage would essentially 'be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis.'"  Id. (quoting Foster, 787 F.3d at 251.)  Consequently, we will consider Aimbridge's causation argument at the pretext stage of our analysis and not in the context of whether the record supports a prima facie case of retaliation in violation of § 1981 and Title VII.

2014, the record contains evidence that Aimbridge required three weeks of training for the banquet set-up position that McKnight requested, and that McKnight was not scheduled for work in that department because he did not complete that training.  (Kim Dep. at 42, 50-51; Def.'s Ex. 25.)   Finally, with respect to McKnight's termination, there is evidence that Aimbridge terminated McKnight for job abandonment because he failed to return to work after June 2014. (See Def.'s Ex. 29.)  We therefore conclude that Aimbridge has satisfied its burden of advancing legitimate non-retaliatory reasons for its conduct.  See Estate of Oliva, 604 F.3d at 798 (citing Moore, 461 F.3d at 342).

                          3.      Pretext

At this stage of our analysis, McKnight has the burden to "'to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  Young, 2016 WL 3101283, at *4 (quoting Moore, 461 F.3d at 342; and citing Marra, 497 F.3d at 300).  Therefore, he is required to prove that Aimbridge's "retaliatory animus was the cause or, put differently, the 'real reason,' for the adverse employment action."  Id. (citing Farrell, 206 F.3d at 286; Moore, 461 F.3d at 342). McKnight argues that he is not required to put forth evidence regarding "but for" causation in the context of summary judgment and asserts that he must only present such evidence at trial.  (See Pl.'s Mem. at 8-10.)  However, at summary judgment as at trial, "[a] plaintiff must address causation at . . . the . . . pretext stage[]," and "show that [he] would not have suffered an adverse employment action 'but for' [his] protected activity."  Young, 2016 WL 3101283, at *4 (citing Farrell, 206 F.3d at 286; Nassar, 133 S. Ct. at 2533); id. at *7 (affirming district court's order granting summary judgment because plaintiff did not show that her EEOC complaint was the "but for" cause of her termination); see also Stone v. Johnson, -- F. Supp. 3d --, 2016 WL

4037292, at *5 (E.D. Pa. July 25, 2016) (granting motion for summary judgment where the record contained no evidence that retaliation was more likely than not the "determinative cause" of the defendant's adverse employment action).

Aimbridge argues that McKnight cannot establish "but for" causation because the record does not support the existence of a causal connection between McKnight's protected activity (his complaint about discrimination on June 9 or 10, 2014 and his June 10, 2014 Charge of Discrimination) and Maher's removing him from the kitchen work schedule and Kim's not giving him banquet work.  Aimbridge argues that there is no evidence that either Maher or Kim was aware that McKnight had made a complaint of discrimination to Jones or that he had filed a Charge of Discrimination when they took the allegedly retaliatory actions about which McKnight now complains.

McKnight admits that he did not tell anyone at the Hotel that he had filed the June 10, 2014 Charge of Discrimination and that Aimbridge was not made aware of the Charge until June 16, 2014, four days after McKnight's meeting with Maher and Jarvis.  (SMF ¶ 19.)  Thus, Maher could not have known that McKnight filed the June 10, 2014 Charge when she took him off of the kitchen work schedule on June 12, 2014.

There is also evidence that Kim did not learn about the Charge of Discrimination until after McKnight filed the instant lawsuit.  (Kim Dep. at 34.)  The record reflects that Kim learned during the late summer of 2014 that McKnight had filed a complaint against the hotel, but did not discover that the complaint involved race discrimination until after the instant lawsuit was filed in 2015.  (Id. at 28-29, 33-34.)  There is no record evidence that Kim was aware of McKnight's Charge of Discrimination prior to the filing of this lawsuit.  We conclude, accordingly, that there is no evidence upon which a reasonable jury could find that retaliation for

McKnight's filing of the June 10, 2014 Charge of Discrimination was the "but for" cause of either Maher's removing him from the kitchen work schedule on June 12, 2014 or Kim's failure to schedule McKnight for banquet work after June 29, 2014.

We must also consider whether retaliation for McKnight's complaint of discrimination to Jones could be the "but for" cause of either Maher's or Kim's alleged retaliatory conduct. Aimbridge maintains Maher was not aware that McKnight had made a complaint about race discrimination to Jones prior her June 12, 2014 meeting with McKnight. Indeed, Maher testified at her deposition that Jones did not tell her that McKnight had come to him in June 2014 and complained that Maher had discriminated against him on the basis of his race.[7] (Maher Dep. at 37-38.) McKnight nonetheless takes the position that Maher must have been aware of his complaint because she told him, during their June 12, 2014 meeting, that she had heard that he was "saying some things." (McKnight Dep. at 156.) However, McKnight did not ask Maher what she meant by that comment and he "shut the conversation down . . . because that wasn't between me and her." (Id.) McKnight believes that Maher was referring to the complaint he made to Jones because he believes that she could not have been referring to anything else, (id. at 156), but he has submitted no evidence to support his speculative belief in that regard. Moreover, McKnight's subjective belief that Maher was aware of his complaint about discrimination, without more, is insufficient to satisfy his burden of pointing to evidence that could establish pretext. See Ekhato v. Rite Aid Corp., 529 F. App'x 152, 156 (3d Cir. 2013) (concluding that the plaintiff's subjective belief about the reason for her termination was insufficient to support a finding of pretext at summary judgment (citations omitted));

---

[7]As we noted above, see supra n.1, Jones denies that McKnight complained about race discrimination during the June 2014 conversation. (Jones Dep. at 42-44.)

Dellapenna, 449 F. App'x at 215–16 (concluding that plaintiff's conjectures were insufficient to satisfy her burden of pointing to evidence that supported the existence of pretext at summary judgment and noting that "mere speculation does not create genuine issues of material fact" (citing Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990)); see also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 413 (E.D. Pa. 2000) ("Pretext cannot be established based on speculation and mere conclusory allegations." (citing Billet v. CIGNA Corp., 940 F.2d 812, 816 (3d Cir. 1991)), aff'd 29 F. App'x 100 (3d Cir. 2002).

McKnight also suggests that Maher must have heard about his complaint to Jones prior to the June 12, 2014 meeting because:  (1) Jones told Maher that McKnight had requested a transfer; (2) Maher was a close friend of Jones; and (3) Maher had not disciplined McKnight for lateness prior to June 12, 2014, even though he had been late many times.  (Pl.'s Mem. at 12.) All of this reasoning is, however, pure speculation which cannot support the existence of pretext. See Ekhato, 529 F. App'x at 156.  While there is record evidence that Maher is friendly with Jones, has socialized outside of work with Jones and his wife, and learned from Jones that McKnight had requested a transfer (Maher Dep. at 15-17), these facts simply do not support a conclusion that Jones told Maher about McKnight's complaint of discrimination.  Moreover, despite McKnight's current assertion that Maher had never orally reprimanded him for lateness prior to the June 12, 2014 meeting, he previously admitted that she had reprimanded him for lateness before that time.  (McKnight Dep. at 93-94.)  In addition, there is evidence that Maher prepared McKnight's June 12, 2014 discipline for lateness and discussed it with Jones in late May 2014, prior to the date on which McKnight claims to have complained to Jones about race discrimination.  (Maher Dep. at 67-68.)  We conclude that McKnight has not submitted any evidence upon which a reasonable jury could conclude that Maher was aware that he had made a

complaint about race discrimination to Jones on June 9 or 10, 2014 and, thus, the record does not contain evidence upon which a reasonable jury could conclude that retaliation for McKnight's protected activity of complaining to Jones was the "but for" cause of Maher's removing him from the kitchen work schedule.  Having already concluded the same with respect to retaliation for McKnight's June 10, 2014 Charge of Discrimination, we further conclude that McKnight has failed to satisfy his burden of pointing to evidence upon which a jury could find that Aimbridge's legitimate non-retaliatory reason for Maher's removing him from the kitchen work schedule was pretext.

Finally, we must consider whether retaliation for McKnight's complaint to Jones could have been the "but for" cause of Kim's failure to schedule McKnight to work in banquets after June 29, 2014.   Aimbridge argues that the evidence does not support the conclusion that retaliation was the "but for" cause of Kim's scheduling choice because there is no evidence that Kim was aware that McKnight had made a complaint about race discrimination to Jones.  In fact, Kim testified at her deposition that Jones never told her that McKnight had complained to him about discrimination (Kim Dep. at 29-30) and McKnight has submitted no evidence to the contrary.  We thus conclude that there is no record evidence upon which a reasonable jury could find that retaliation for McKnight's protected activity in complaining to Jones was the "but for" cause of Kim's failure to schedule him to work banquets after June 29, 2014.  Having already concluded the same with respect to McKnight's June 10, 2014 Charge of Discrimination, we further conclude that McKnight has failed to satisfy his burden of establishing that Aimbridge's legitimate non-retaliatory reason for Kim's failure to schedule him to work banquets after June 29, 2014 was pretext.

Aimbridge also argues McKnight cannot satisfy his burden of establishing that its legitimate non-retaliatory reason for his termination (i.e. job abandonment) was a pretext for retaliation because there is no record evidence that retaliation for McKnight's protected activity was, instead, the "but for" cause of his termination. McKnight has made no attempt to counter this argument by pointing to evidence that causally links retaliation for his protected activity to his termination. Rather, in keeping with his position that he need not present evidence that would demonstrate "but for" causation at summary judgment, McKnight only argues that the record contains evidence that demonstrates that Aimbridge's claim that he was terminated for job abandonment was false. However, as we discussed infra, to satisfy his burden of showing that Aimbridge's "proffered reason [for his termination] was a pretext for retaliation," Estate of Oliva, 604 F.3d at 798 (citation omitted), McKnight must point to evidence on the record that, if credited, could "convince the factfinder **both** that [Aimbridge's] proffered explanation was false,[8] **and** that retaliation was the real reason for the adverse employment action." Young, 2016 WL 3101283, at *4 (quotation and citation omitted) (emphasis added). Since Plaintiff points to

---

[8]McKnight has identified record evidence that is inconsistent with Aimbridge's position that he was terminated for abandoning his job. Specifically, he testified at this deposition that on December 12, 2014, less than one month before Aimbridge terminated his employment, he told Jones that he would be available to work in the banquet department once the Hotel's renovations were completed in February 2015. (McKnight Dep. at 234-35.) In addition, on April 8, 2015, the Pennsylvania Unemployment Compensation Board of Review concluded, in connection with McKnight's application for unemployment compensation following his termination, that Aimbridge had "failed to meet its burden of proving willful misconduct in connection with the claimant's employment . . . ." (Pl.'s Ex. E at UE 0016.) Decisions from administrative proceedings such as unemployment compensation hearings "have been found to be admissible evidence in federal courts" and "may have probative value when the parties dispute a defendant's reason for terminating a plaintiff's employment." Long v. Valley Forge Military Academy Foundation, Civ. A. No. 05-4454, 2008 WL 5157508 (E.D. Pa. Dec. 8, 2008) (citing Helfrich v. Lehigh Valley Hosp., Civ. A. No. 03-5973, 2005 WL 1715689, at *20 (E.D. Pa. July 21, 2005); Fitch v. R.J. Reynolds Tobacco Co., 675 F. Supp. 133, 138 (S.D.N.Y. 1987)).

no record evidence that retaliation for his protected activity was the "but for" cause of his termination, we conclude that he has failed to satisfy his burden of establishing that Aimbridge's asserted reason for his termination was pretext for retaliation.  Thus, we further conclude that McKnight has failed to satisfy his burden at the third step of the <u>McDonnell Douglas</u> burden shifting framework of pointing to evidence that, if credited, could show that Aimbridge's proffered reasons for Maher's not giving him kitchen work after June 12, 2014; Kim not giving him hours to work in banquets after June 29, 2014; and his termination on January 9, 2015, were pretexts for retaliation.  <u>See</u> <u>Young</u>, 2016 WL 3101283, at *4, *7.  Accordingly, we grant Aimbridge's Motion for Summary Judgment as to McKnight's claims in Counts I and II that Aimbridge retaliated against him in violation of 42 U.S.C. § 1981 and Title VII.

## IV.   CONCLUSION

For the reasons stated above, we grant Defendant Aimbridge Employee Service Corporation's Motion for Summary Judgment in its entirety.  An appropriate order follows.

BY THE COURT:


/s/ John R. Padova

_____

John R. Padova, J.